SMITH, Justice:
The proceedings which resulted in the entry of the decree from which this appeal has been prosecuted were begun in the Chancery Court of the First Judicial District of Hinds County by appellant, John Hart Lewis, as petitioner, against his brother, M. A. Lewis, Jr., Deposit Guaranty National Bank, (Deposit Guaranty Bank and Trust Company) and other devisees and legatees named in the will of the late M. A. Lewis (Sr.), as defendants. The suit involved the construction and administration of a testamentary trust established under the Lewis will. A copy of Item Three of the will, creating the trust, is appended to this opinion.
The Lewis will was admitted to probate in August, 1953. From that time until the death in October, 1956 of Mrs. Eva Hart Lewis, widow of the testator, she and Deposit Guaranty Bank and Trust Company administered the trust, as testamentary trustees, as provided in the will. Following the death of Mrs. Lewis, on a petition *606 filed by Deposit Guaranty Bank and Trust Company, as surviving trustee, the Court, also in keeping with directions contained in the will, appointed the testator’s sons, John Hart Lewis and M. A. Lewis, Jr., to serve with the bank, as trustees. In this decree, entered in December, 1956, it was provided that:
[I]n all other matters connected with the conduct and management of said trust, the three testamentary co-trustees, . . . shall be guided by, act and manage the said affairs of the trust pursuant to and in accordance with the judgment and views of a majority of said three testamentary co-trustees.
Since then, the bank, with John Hart Lewis and M. A. Lewis, Jr., have continued to administer the estate as trustees, and M. A. Lewis, Jr., has also served as attorney.
The substance of the principal contentions of John Hart Lewis, as set out in his original and amended petitions, may be summarized as follows: He sought removal of his brother and cotrustee, M. A. Lewis, Jr., as attorney and denial to him of attorneys fees, or, alternatively, leave to employ, at the expense of the trust estate, an attorney of his own; a partial distribution to himself of $13,000 because of an alleged ‘‘business emergency”; the setting aside of a sum, based upon the life expectancy of Mrs. Sage, sufficient to meet the requirements of the will during her lifetime, the balance of the estate to be set aside for the use and benefit of the “other living named beneficiaries.”
The testator in establishing, and providing for the administration and final distribution of the trust estate, directed that:
Said Trustees shall thus accumulate the net income from said estate and keep the same prudently invested but with no duty to make any distribution thereof, unless in case of an unforeseen emergency, the Trustees may determine to make a total or partial distribution of such income, if by them deemed to be for the best interest of this estate.
He also, in unequivocal language, provided that:
The time for determination of the identity of the cestuis que trustent [beneficiaries] hereunder shall be and is hereby fixed as at the time of the death of my cousin, Mrs. Vivian Sage, when this trust is to be terminated and the property divided, and not at my death.
It is abundantly clear that the testator intended to restrict the actions of the trustees to the accumulation and investment of the trust funds, and specifically provided that distribution should not be made (except in the event the trustees should determine that an “unforeseen emergency” had occurred) until the death of Mrs. Vivian Sage. Mrs. Sage is living at this time. The estate has been increased during its administration since the testator’s death from an original value of approximately $300,000 to over $1,000,000.
In dealing with the trust estate, in matters left to their discretion by the testator, under the. terms of the 1956 decree so providing (and as a matter of practical and reasonable necessity) the trustees have acted, and must act, within the framework of the trust, according to the will of the majority, subject, of course, to review by the chancery court or chancellor, if their acts are properly called in question. In this case, a majority of the trustees declined the demands of John Hart Lewis which are now the subject of this litigation. In order to override the decision of the majority of the trustees it was necessary that it be established that they had abused their discretion or had acted contrary to the terms of the trust or in derogation of some duty to the trust estate. Otherwise, a decision of the majority of the trustees will not be disturbed by the court.
The chancellor dealt with each of the several contentions advanced by John Hart Lewis. He denied the request for a partial *607 distribution, saying that “under the clear and unmistakable terms of this will no one at this time can definitely say who the beneficiaries of this trust will ultimately be.” He held, as had a majority of the trustees, that no “unforeseen emergency” existed within the meaning of the will, requiring partial distribution. The demand of petitioner that M. A. Lewis, Jr., be removed as attorney for the trust upon the grounds that there was a conflict of interest in that he was a beneficiary under the will, (if he should survive Mrs. Sage), attorney for Deposit Guaranty National Bank, a cotrus-tee, as well as a member of the executive committee of its board of directors was also rejected, the chancellor saying:
[T]he Court is of the opinion that there is no conflict of interests on the part of M. A. Lewis, Jr. as attorney for the different entities set forth in Proposition II, but, on the contrary, finds that it is to the best interests of the estate that he continue to act as attorney for the Trust. There was no evidence that any of his acts or advice was contrary to the best interests of the trust estate, and the Bank as trustee specifically requested that he be retained as counsel for the Trust. .
The testator knew and was well aware of the animosity and differences that existed between his sons. He knew, and so did his attorney who drew the will, that in all probability the two would not go out of their way to agree with each other in many respects. In the thinking of the Court, there was unusual wisdom in this particular instance of so making the two successor trustees along with the Bank, because that questions would be asked as to all procedures and that the estate, by amicable agreements between the three, would not be dissipated. In view of the increase of the estate from $300,000 to over $1,000,000 would bear out the wisdom of the testator in the selection of these trustees.
Appellant says in his brief, “Here Appellant, although previously consenting to representation by M. A. Lewis, Jr., (as attorney) has now revoked this consent and has invoked the aid of the courts in obtaining objective legal representation in trust matters.” The first objection interposed to the retention of M. A. Lewis, Jr., as attorney, appears, therefore, to have been interposed after some fourteen years of satisfactory service in that capacity. Long-standing animosity had existed between John Hart Lewis and his brother, M. A. Lewis, Jr., but this was known to the testator and it is apparent from the prospering of the trust estate during this period that such enmity had not affected the estate adversely and it was not established that it had ever done so. On the contrary, the record discloses that, in the making of several major decisions by the trustees, John Hart Lewis and M. A. Lewis, Jr., had voted together and against the bank. The estate made substantial investments in the stock of the bank and was one of its principal, if not its largest, single stockholder. The chancellor was justified in finding, as he did find, that M. A. Lewis, Jr., had not been unfaithful to the trust and that no instance had been shown wherein his duties to his several clients had conflicted. The record makes it clear that the chancellor was correct in finding that the interests of M. A. Lewis, Jr., as trustee, beneficiary, attorney for the trust and for the bank, were identical. The mere speculation that at some future time a conflict might possibly arise was insufficient to justify overriding the decision of the majority of the trustees to retain M. A. Lewis, Jr., as attorney.
Appellees cite, in response to the suggestion that appellant is entitled to independent counsel of his own, the case of In Re Greenberg’s Estate, 15 Ill.App.2d 414, 146 N.E.2d 404, 66 A.L.R.2d 162 (1957), (leave to appeal denied by the Illinois Supreme Court March 18, 1958), where a somewhat similar contention was *608 made by the dissenting member of three fiduciaries. In Greenberg, the Court said:
If each co-executor were to be allowed independent counsel, it could well be that in the approach to every decision there would be as many opinions as co-executors. An estate so administered would lose the advantage of fluid administration and would have its funds diminished by legal expenses. The testator’s directive is in conformity with the legal principle of unit control as approved in the foregoing decisions. This is the only practical way to administer an estate; in the event of mismanagement there are legal remedies available. . (146 N.E.2d at 408).
After a lengthy trial, during which he heard a great deal of evidence, the chancellor concluded that appellant was not entitled to the relief sought and entered a decree for appellee. The record is ample to support his conclusions and, certainly, it cannot be said that he was manifestly wrong.
Affirmed.
RODGERS, P. J., and PATTERSON, INZER and SUGG, JJ., concur.
APPENDIX
WILL OF M. A. LEWIS (SR.)
ITEM THREE: I devise and bequeath in trust to the hereinafter named Trustees all of the entire balance of my estate, real, personal, and mixed, wheresoever situated, in trust, for the uses and on the conditions herein delineated. The Deposit Guaranty Bank and Trust Company and my wife, Mrs. Eva Hart Lewis, are designated as Trustees herein. Upon the death of my wife, then my sons, John Hart Lewis and M. A. Lewis, Jr., are designated as Trustees in the place and stead of my wife to serve with said bank as co-trustees of this estate. This estate in trust shall be for the use and benefit in equal part (share and share alike) of my wife, Mrs. Eva Hart Lewis, if living, and my daughter, Mrs. Elaine L. Mack, if living, or her child or children, if any (per stirpes), and my sons, John Hart Lewis, if living, or his heirs (per stirpes), and M. A. Lewis, Jr., if living, or his child or children, if any (per stirpes). Should my wife predecease me or die before the termination of this trust and before her receipt of her equal share of this trust estate, then her share thereof shall revert to this estate and be divided equally among my said named children, if living or per stirpes as herein provided in the event of death. Should my son, M. A. Lewis, Jr., predecease me or die before receipt of his share of this estate and leave no child or children (either issue or adopted), then his share thereof shall revert to and be equally divided among the other living beneficiaries (per stirpes) as above provided. Should my daughter, Mrs. Elaine L. Mack, predecease me or die before receipt of her share of this trust estate and leave no child or children (either issue or adopted), then her share thereof shall revert to and be equally divided among the other living beneficiaries (per stirpes) as above provided. Should my son, John Hart Lewis, predecease me or die before receipt of his share of this trust estate, then his share thereof shall go to and be divided equally among his wife, if living, and living children (whether issue or adopted).
The time for determination of the identity of the cestuis que trustent hereunder shall be and is hereby fixed as at the time of the death of my cousin, Mrs. Vivian Sage, when this trust is to be terminated and the property divided, and not at my death.
The Trustees of this trust estate shall conduct and manage the affairs thereof in a prudent and businesslike manner but without bond and without any duty to account or report to any court for their acts. Said Trustees are vested with the full and plenary power and authority to sell or ex *609 change and reinvest any part of this trust estate in their unlimited discretion and they are vested with the full power and authority to execute a conveyance which will confer on the purchaser a fee simple title thereto at such price and on such terms and conditions as they may agree in their unlimited discretion thereasto. Said Trustees shall thus accumulate the net income from said estate and keep the same prudently invested hut with no duty to make any distribution thereof, unless in case of an unforeseen emergency, the Trustees may determine to make a total or partial distribution of such income, if by them deemed to be for the best interest of this estate.
This trust shall terminate upon the death of my cousin, Mrs. Vivian Sage, of Dallas, Texas, and thereafter all assets of this trust shall be conveyed and delivered to the cestuis que trustent as hereinbefore provided, subject to the exception hereinafter stated. On the first day of each calendar month after my death, the Trustees of this estate shall pay to my cousin, Mrs. Vivian Sage, the sum of One Hundred Dollars ($100) per month during and throughout her lifetime. Should Mrs. Sage incur any unforeseen and unexpected emergency expense, then the Trustees of this estate are vested with the full discretionary power and authority to pay all or any part thereof. At her death, the Trustees of my estate shall hold Six Thousand Dollars ($6,000) in cash in trust for the purposes hereinafter stated, and then distribute the entire balance of my estate among the ces-tuis que trustent as above provided.
After the death of Mrs. Vivian Sage, then said Trustees are directed to pay my cousin, Mrs. Grace Douglas, of Gainesville, Texas, the sum of Fifty Dollars ($50) on the first day of each calendar month thereafter during and throughout her lifetime, or until said amount of Six Thousand Dollars ($6,000) is thereby exhausted. Should Mrs. Douglas incur any unforeseen and unexpécted emergency expense, then the Trustees of this estate are vested with the full discretionary power and authority to pay the same or ",ny part thereof so far as possible out of said Six-Thousand-Dollar Fund. Upon the death of Mrs. Douglas, any balance remaining in said fund shall be distributed among the cestuis que trus-tent as hereinabove provided.